SUCCESSORS OF P. MILLÓN & Co., Plaintiffs and Appellees, *v.* RAMÓN CAAMAÑO ET AL., Defendants and Appellants.

No. 4405. Argued May 4, 1928.—Decided May 11, 1928.

*Luis Mercader* for the appellants. *José G. Torres* and *C. del Toro Fernández* for the appellees.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

Successors of P. Millón & Co., a commercial partnership of San Juan, brought an action in the District Court of Arecibo against R. Caamaño and Manuel García to recover $580.33 with interest and costs. As a basis of their action the plaintiffs alleged that the defendants had signed in their favor a promissory note, which was copied into the complaint, for that sum and failed to pay any amount of it when the payments fell due.

Defendant R. Caamaño answered the complaint denying that he had signed the note copied into the complaint and substantially denying the other allegations. He alleged as defense that on February 19, 1924, his creditors had brought judicial proceedings against him for the collection of their credits, had attached his establishment and were attempting to have him declared bankrupt when Plácido Millón came to Arecibo and requested him to sign a document for payment of the account of P. Millón & Co. in convenient instalments; that the document was written by Millón in his own handwriting and was signed by Caamaño and by Manuel García as witness, García writing the word "witness" before his signature; that Caamaño had paid to the plaintiffs on that account $15 in a money order, $50 by a check and $24.55 in goods which he had supplied to the plaintiffs, and that those sums were not credited to him by the plaintiffs.

The other defendant denied in his answer the essential facts alleged in the complaint and denied that he had signed the note copied into the complaint. He alleged that the note shown to him and to others bore the signatures of Caamaño and of Manuel García with the word "witness" preceding his signature which had been crossed out and that the word had been inserted by Manuel García himself in another document. He alleged as defense that Placido Millón, managing partner of the plaintiff firm, was in Arecibo on February 19, 1924, in the hotel belonging to him, García, and sent for Caamaño and after talking with him about his debts succeeded

in "getting Caamaño to promise to pay the total of his indebtedness to -P. Millón & Co." and Plácido Millón himself drafted and wrote the document which was signed by Caamaño who then asked defendant García to sign the document as witness, which he did, writing the word "witness" before his signature, that being the only document of which he has knowledge.

The complaint was amended so as to acknowledge the sums of $15 and $50 as having been paid on account by defendant Caamaño.

The case was tried on June 17, 1926, in the District Court of Arecibo and the court rendered judgment dismissing the complaint. That judgment was reversed by the Supreme Court on February 25, 1927, and substituted by a judgment of nonsuit against the plaintiffs. 36 P.R.R. 291. The plaintiffs moved for a new trial, which was granted, and the case was heard on May 18, 1927. At the trial the defendants contended that the document or note presented by the plaintiffs was not the one that they signed, for the latter was written by Plácido Millón in his own handwriting. Defendant Caamaño, who began his testimony by saying that the signature on the note presented by the plaintiffs looked like his signature, but that the paper was not the same, ended by saying that it was his signature. He asserted that the document presented was not the original document because the original was in the handwriting of Millón and not typewritten (the document presented is typewritten). He testified likewise that the document had been altered, because the word "witness" preceding the signature of Manuel García had been erased and substituted by the typewritten word "surety." Defendant García testified first that the signature appearing as his on the said document was an image and likeness of his signature, but that he did not write it; and later in answer to questions of the judge he said that the signature on the document was his signature, but contended that the document presented was not the one which he signed; that the one which he

signed was signed by him as witness and he did not believe that the document shown to him at the trial was the one that he signed; that the one which he signed had no strips of paper and was written by Millón and not typewritten. This witness maintained in his testimony that he signed the document as witness and not as joint surety.

The principal evidence tended to show that the signatures appearing on the document presented were those of R. Caamaño and Manuel García.

On June 7, 1927, the District Court of Arecibo rendered judgment for the plaintiffs, adjudging that defendants Ramón Caamaño and Manuel García pay jointly and severally to the plaintiffs the sum of $515.33 and the costs, and from that judgment the present appeal was taken. The judgment is accompanied by an opinion containing a careful and exact examination of the evidence and of the questions of law raised.

The document sued on reads as follows:

"We promise to pay jointly and severally to the order of Successors of P. Millón & Co. of San Juan, P. R., the sum stated at the foot of this document, and we further promise to pay the attorney's fees, etc., that may be necessary.

"The sum due to Successors of P. Millón & Co. of San Juan is $580.33 and the expenses that may be incurred as stated.

"The payment of the aforesaid sum shall be as follows:

"First installment: $290 in two checks in the possession of said Millón & Co. payable on the 24th and 29th of the current month and year.

"The remaining $293.33 shall be paid within the time agreed upon with said firm.

"Arecibo, P. R., February 19, 1927. (Signed) R. Caamaño. (Signed) Manuel García, Surety." The word "Witness" written by hand is crossed out.

The word "witness" which appears to have been written next to the signature of Manuel García is crossed out by five lines in ink having the same appearance of that used in writing the word and in writing the name "Manuel García."

We speak of the appearance and not as affirming any fact. The document appears to have been joined together in two places along its width by two strips of transparent and adhesive paper. It is typewritten.

As regards the signatures on the document in question, that of R. Caamaño has very large initials and the upper curves of the R and the C cross the broken or worn-out line which is covered by a strip of transparent paper, so that the signature is not found on a single piece of paper but on two. An examination of the document, bearing in mind the testimony of expert Timothée, is convincing that no parts of the document have been substituted, and this is the conclusion reached by the trial judge in the opinion delivered in the case. This in regard to a material examination.

Referring to the significance and legal value of the context of the note, its first words "We promise to pay jointly and severally" show expressly the existence of a joint obligation, and the signatures of two persons at the foot of that document can not be construed or admitted in any other sense than that of giving to the signers the character of obligors in the contract.

The trial judge did not hesitate to hold that the document presented is the authentic one signed and delivered by the defendants to Millón, the representative of the plaintiff firm. That is the conclusion reached by the judge after weighing the evidence and it can not be attacked as erroneous or influenced by passion or prejudice. We make the same statement in regard to the weighing of all of the evidence. This disposes of the second and third errors assigned by appellant Manuel García.

But appellant Manuel García has assigned that the court erred in taking jurisdiction of the case notwithstanding the fact that the amount in litigation is less than $500.

The complaint set up a claim for $580.33 with legal interest and costs. In the amended complaint the amount claimed was reduced to $515.33. This sum is sufficient

to establish the jurisdiction of the court by reason of the amount. Although the defendants, or one of them, alleged that the debt was less than the amount claimed, this would not deprive the court of jurisdiction, and even if a less amount were proved, the court would not lose its jurisdiction. In *Turner* v. *Municipal Council of San Juan*, 24 P.R.R. 556, this court upheld the current and constant doctrine that "the amount claimed determines the jurisdiction of the court," citing the necessary authorities.

There was no lack of jurisdiction of the court in the present case.

It has been assigned that the court erred in holding defendant García to be a joint surety of the obligation sued on and this point is argued on the strength of the testimony of Millón, Caamaño and García.

First of all the context of the document should be considered. It can not be contended successfully that a person of sound judgment and full capacity will sign a document creating an obligation without stopping to read the document and know what he is signing. The usual and human thing is that any sane person who is about to sign a document of that kind will examine it and take account of the possible liabilities to be incurred by his act, especially when, as in this case, García wrote the word "witness" before his signature and had to cross it out at the suggestion of Millon. This is what the judge found to be true when weighing the evidence.

There is here at least the satisfactory and disputable presumption that every person takes care of his own interests with ordinary zeal or diligence and that the usual course of business has been followed, both to be found in section 102 of the Law of Evidence.

It is said in the document presented: "We promise to pay jointly and severally . . . etc."

This form of establishing the obligation is nothing else than the expression of solidarity, of the constitution of the

liability *in solidum* as regards the debtors, and giving to the creditor the special rights and powers of this kind of obligation, among them that of claiming fulfillment by any one of the obligors in the whole amount. This is why securities in which the surety accepts the condition of solidarity are almost confused with the ordinary joint obligation, for in such cases the surety loses the right of excussion of property of the principal debtor. Sec. 1732, Civil Code. If in these cases the surety should not preserve with respect to his trust some of the special rights created by the security contract, it might be thought that those obligations with the note of solidarity had not the character of securities.

The Code considers the status of the surety *in solidum* so much like that of the debtor of the same class that the second paragraph of section 1723 of it orders the observance of the provisions of section four, Chapter third, Title first of Book four which refers to joint and several obligations. In *Santiago* v. *Ares,* 25 P.R.R. 448, this court held that section 1111 of the Civil Code is applicable to sureties *in solidum.*

In *Cintrón & Aboy* v. *Solá,* 22 P.R.R. 245, this court held that the intention of the contracting parties is indicated by the wording of the note therein involved, which document begins with the words ''We promise to pay jointly to Antonio María Sorbas . . .'' By that context and by the investigation of the intention of the parties it was held in that case that Solá & Son and Celestino Solá, who signed the document, were debtors *in solidum.*

It is argued by the appellants that the security exists only when the principal contract is valid, and that in the present case the contract is neither valid nor effective.

The theory that the existence of a security depends on whether or not the principal obligation is valid is based on section 1725 of the Civil Code whose first paragraph reads as follows: ''Security can not exist without a valid obligation.''

This is a consequence of the very nature of the security contract which is essentially an accessory requiring, as all accessories, the existence of a principal element legally sound and effective.

But that section has never permitted that the declaration of one of the parties that the principal obligation is void is sufficient for annulling the security. In this case the court has held that the principal obligation is effective and valid, and as long as that holding of the court stands the argument of the appellants is of no effect.

If, as contended by the appellants, extraordinary importance should be given to how the word "surety" was inserted in the document and that word should be eliminated, the contract would be simply a credit obligation or a joint and several debt and the situation of the appellees would be worse than it is now.

The fifth error assigned refers to the imposition of costs on the appellants.

First of all, the costs have been imposed on the defendants and not on the appellants.

But after reading the stenographic record, and in view of the manifest temerity of the defendants, there was no room for any other decision as to the costs than that of the trial court.

The assignments made by the appellants are without merit and therefore the judgment appealed from must be affirmed.